# Wistar v. Philadelphia.

| 80  505
|161  40

80      505
19 SC ¹424

1. Paving the footway and curbing had been done by a property owner on Broad street, Philadelphia, upon the requirement of the authorities; about four years afterwards, the roadway was narrowed by councils, the footway widened, and he required to put up a new and costly curb; having neglected this the city did the work and filed a claim against his property: *Held*, that the foregoing facts, and that the streets, &c., were in good condition and required no repair, were a defence to the scire facias on the claim.

2. A power to pave conferred by Acts of Assembly implies a power to repair and repave when the condition of the streets requires it; of this the city authorities may primâ facie judge.

3. A power conferred by the legislature to take up, alter and relay pavements and curbs at the pleasure of a municipal corporation and at the expense of the property owners, who had recently paid for a good pavement, is in derogation of the right of private property as laying a special tax on a small class.

4. The 40th section of Act of February 2d 1854 (Consolidation Act), does not intend to confer the power on the city to make such improvement, except at the expense of the city.

5. The foundation of the power to tax specially, is the benefit the object of the tax confers on the owner of the property.

6. Paving at the expense of the adjoining owner means the paving that is customary.

7. Acts of February 2d 1854, sect. 40, and April 16th 1838, sect. 3, examined.

8. Philadelphia *v.* Hoxie, 2 Wright 339; Philadelphia *v.* Tryon, 11 Casey 402; Reed *v.* Erie, 29 P. F. Smith 346, remarked on.

February 24th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Philadelphia*: Of January Term 1875, No. 91.

This was a scire facias sur mechanics' lien, issued September 12th 1874, by the city of Philadelphia, to the use of Joseph Johnson, James Holgate and Lafayette Horter, against Richard Wistar.

The claim was filed February 10th 1874, "against all that certain lot on the east side of Broad street, at the distance of 263 feet north from Race street, containing in front on Broad street 121½ feet, * * * for work done and materials furnished on Broad street in front of said lot, and duly assessed and charged as follows:—

"1873, August 30th.

| | |
|---|---|
| For 121½ linear feet of curbstone, @ $1.85, | $224.77 |
| For measuring charge, | 2.42 |
| 5 per centum imposed by Act of March 23d 1866, | 11.35 |
| | $238.54 |

"Said work having been done pursuant to direction and order of the highway department, under authority of 'an ordinance for the improvement of Broad street, south of Poplar street,' approved

[Wistar *v.* Philadelphia.]

December 31st 1872, after the curb line was adjusted in accordance therewith, and after a contract for paving the cartway of Broad street in front of the above described ground had been made, and the owner of the above described ground had been notified to cause the curb in front of the same to be set with cut granite curbstones, and had neglected and refused to set curb as aforesaid for more than thirty days after said notice, and after said contract was entered into for paving the cartway." * * *

The defendant filed an affidavit of defence averring:—

" He is, and has for some years past been, one of the owners of the premises on Broad street, against which said claim is filed. His brother, W. Lewis Wistar, is co-owner with him. After they became such owners, and not more than about four years ago, the sidewalk in front of said property was newly paved with bricks, supported by curbstones which were then reset in the manner required by the Acts of Assembly and ordinances then existing, and at their expense under notice from the highway department requiring that said work should be done. Some time prior to December 1872, the roadway of Broad street, north of Poplar street, having been narrowed, the sidewalks were widened to twenty-eight feet on each side, the owners being allowed the privilege of enclosing eight feet as a garden, with open work of iron or stone."

The affidavit referred to set out the following ordinances and Acts of Assembly:—

On the 31st of that month an ordinance was passed by the councils, the first section of which required the department of surveys to lay out and adjust the curb line on both sides of Broad street from Poplar street southward, so as to correspond with present curb lines on Broad street north of Poplar street, and so that the width of roadway south of Poplar street should be the same as north of that street, and no contract for paving should be made for any greater width than the width of the roadway so adjusted.

"Sect. 2. When any contract shall be made as aforesaid, the owners of ground fronting upon said street shall, within thirty days after the curb line upon said street shall have been laid out and adjusted as aforesaid, cause the curb in front of their several properties to be reset with cut granite curbstones, which shall not be less than eight inches in thickness, two feet in depth, and each stone not less than nine feet in length, and also to pave or repave the sidewalks in front of their properties with well laid and solid pavement to the line of the said curb, and in case any such owner shall neglect or refuse so to curb and pave his footway, the same proceedings shall be had as are now authorized in the case of owners of lots neglecting to curb and pave their footways."

Sect. 4. Repealed all ordinances inconsistent with this ordinance so far as related to the curbing, grading and paving of the footways and roadway of Broad street, south of Poplar street.

[Wistar v. Philadelphia.]

" On the 28th of April 1873, an Act of Assembly was passed, viz :—

" ' That the Select and Common Councils of the city of Philadelphia be and they are hereby authorized and empowered to alter and regulate the curb lines and heights, and determine and make uniform the widths of the footways of the streets within the limits of the said city."

The following resolution of councils was passed May 19th 1873.

" That the department of surveys be authorized and is hereby directed to have prepared plans in duplicate of Broad street, between Poplar street and League Island, fixing the width of footways at twenty-two feet, and adjusting the grades to conform therewith."

After the passage of this ordinance, but prior to July 7th 1873, a plan for the revision of the curb line of Broad street, from Vine to South street, was prepared by the board of surveys, and notice was given by the city solicitor by handbills and advertisements that the board of surveys had fixed July 7th 1873, to hear any objections. * * * Said plan was subsequently approved by the said board, but no further action in respect thereto was taken by the councils of the city, nor was any further ordinance or resolution passed by said councils in reference to the alteration or regulation of the curb lines and heights on said street, or the determination and making uniform of the widths of the footways thereon. The said plan of revision of said board did not prescribe curb lines uniform with other parts of said street, but while north of Poplar street the sidewalk was twenty-eight feet wide, and south of Vine street eighteen feet wide, said plan made by said board fixed a width for the sidewalk between Race and Vine of twenty-two feet. Prior to said 7th day of July 1873, notices had been given to the deponent and sundry others of the owners of property on said street, requiring them " to have granite curbstones set and the footway paved opposite (their) property * * * within thirty days, in conformity with the ordinance of December 31st 1872," but after the said action of said board in respect to said plan, on or subsequent to July 7th 1873, no further notice having been given to property owners, the commissioner of highways proceeded under the alleged authority of the act and ordinances, the curbs already set in conformity with law were removed, and a new and most expensive cut granite curb set on the new line indicated by said plan of revision made by the board of surveys, and the claim for which this suit is brought is for said new curb, the cost of which is more than three times that of the old curb, and for the setting of the same without any allowance for the old curb.

The affidavit further averred that the ordinances cited and subsequent ordinances were part of a system by which it was intended to make Broad street a great public thoroughfare, to ornament, &c., so as to make it attractive " without any pretence that

[Wistar *v.* Philadelphia.]

there were any defects in the footway which required repairs or that it was not sufficient for the public travel or that it did not comply with the laws in force when it was laid," and without any allegation that the curbstones already set were not proper and sufficient for the purpose or that the repair or resetting of the curbstones was needed.

The defendant was advised and believed that the above-mentioned act and ordinances did not give authority to the city to set new and costly cut granite curbstone and charge the defendant with the cost.

The defendant afterwards filed a supplemental affidavit of defence, which averred, amongst other things, that the curbstones previously set " were of proper and sufficient width, in every respect proper and sufficiently well laid ; and set in the style and manner universally adopted for years past in this city, and so as to assimilate that part of the city in this respect with other parts of the city, and comply with all laws and ordinances prior to said date ; that said sidewalk or footway were in good order and condition, needing no repair or improvement, or any relaying, resetting, alteration or substitution whatever ; that no notice to repair said sidewalk, or reset said curb, or any notice other than (that mentioned in the) original affidavit, was ever given to this deponent or his said brother. * * * That at or about the date in said claim mentioned, without taking up or distributing said pavement so laid, or said curbstone so reset, the costly cut granite curbstone for which this claim is filed, was set outside of said old or existing curbstone, at the distance of twenty-eight feet from the house line, leaving an unpaved surface between said two curbstones, both of which now are and remain on the ground, set in the usual way ; that no such new and costly curbstone, or any new pavement for the sidewalk or any widening of the said sidewalk was necessary for public comfort and convenience, or to bring or keep that part of Broad street in the condition of other streets for the ordinary benefit, advantage, use, business and travel of those living upon it, or of the public generally ; but that said sidewalk was widened, and said costly cut granite pavement laid, to make or fit said street for a great, improved, ornamental public drive." * * *

The ordinance of December 31st 1872, relating to the improvement of Broad street, provided, amongst other things, that

" Within thirty days after the curb line upon said street shall have been laid out and adjusted as aforesaid, the owners shall cause the curb in front of their several properties to be reset with cut granite curbstone, which shall not be less than eight inches in thickness, two feet in depth, and each stone not less than nine feet in length; also, to pave or repave the sidewalk in front of their properties with well-laid and solid pavements to the line of said curb. And in case any such owner shall neglect or refuse so to

[Wistar *v.* Philadelphia.]

curb and pave his or her footway, the same proceedings shall be had as are now authorized in case of owners of lots neglecting to curb and pave their footways."

The 3d section of the Act of April 16th 1838, Pamph. L. 626, enacts:—

"That the councils of Philadelphia may, from time to time, establish such rules as they may deem expedient for the better regulation of porches, benches, door-steps, railings, bulk-windows * * * or other thing projecting over the sidewalks or other portion of any streets, lanes or alleys; and in relation to boxes, &c., placed in or upon any of the said footways, &c., and for the better protection and regulation of markets, &c., and at the expense of the owner of the property adjoining, to regulate, grade, pave and re-pave, curb and recurb the said footways, * * * and the same enforce by suitable penalties * * * recoverable before any alderman," &c.

The Act of February 2d 1854 (Consolidation Act), section 40, Pamph. L. 43, enacts:—

"That it may be prescribed by ordinance that paving of streets, except at the intersection thereof and of footways, and laying of water-pipes within the limits of the city, shall be done at the expense of the owners of ground in front whereof such work shall be done, and liens may be filed by said city for the same as is now practised and allowed by law."

The District Court (Hare, P. J., and Thayer, J., dissenting) entered judgment against the defendant for want of a sufficient affidavit of defence.

The defendant sued out a writ of error and assigned for error, the entering judgment against him for want of a sufficient affidavit of defence.

*J. H. Gendell* and *E. S. Miller*, for plaintiffs in error.—The improvement for which this claim is made is to compel the defendant to pay for that which is a general benefit; this cannot be done: Hammett *v.* Philadelphia, 15 P. F. Smith 146; Washington Avenue, 19 Id. 352. They cited and discussed the Acts of Assembly and city ordinances relating to the questions in the case.

*D. W. Sellers*, for defendant in error.—The Acts of Assembly and city ordinances under which the work was done are valid: Philadelphia *v.* Sutter, 6 Casey 55; Philadelphia *v.* Tryon, 11 Id. 401; Philadelphia *v.* Wistar, Id. 427; Lipps *v.* Philadelphia, 2 Wright 503; Philadelphia *v.* Burgin, 14 Id. 539. No conclusion of any defence which shows a want of power to authorize the work has been sustained: Kensington *v.* Keith, 2 Barr 218; Reilly *v.* Philadelphia, 10 P. F. Smith 467; Hammett *v.* Philadelphia, 15 Id. 146; Philadelphia *v.* Hoxie, 2 Wright 339. In all cases where a statutory tribunal is created to determine a question out of the

course of the common law, there is no review in any manner of the judgment of such tribunal, unless the statute gives it: Taylor *v.* Board of Health, 7 Casey 75; Fisher *v.* Harrisburg, 2 Grant 291; Wharton *v.* Borough, 1 Wright 371; Horner *v.* Railroad Co., Id. 335; Carr *v.* Northern Liberties, 11 Casey 324; Hughes *v.* Kline, 6 Id. 227; Kimber *v.* County, 8 Harris 366; Hulseman *v.* Rems, 5 Wright 396; Richardson's Appeal, 6 Casey 510.

Chief Justice AGNEW delivered the opinion of the court, May 8th 1876.

What we have to deal with here, is the affidavit of defence. Does it set forth a sufficient ground to defeat the plaintiff's recovery? Want of power to impose the alleged liability is clearly a good defence. The question is not whether the legislature might authorize such a claim to be made, but whether this authority has been granted.

The original and supplemental affidavits are diffuse, setting forth many things unnecessary to be noticed. Premising that the claim filed is a naked charge for 121½ feet of curbstone laid opposite the defendant's lot, without circumstances stated, except that the work was done in pursuance of the ordinance of December 31st 1872, after adjustment of the curb line, and a contract made for paving the street, we may gather and condense the following facts from the affidavits of defence: That about three years before the new curbing was set, the footway opposite defendant's lot had been well paved, and the curb set at his expense; that they were of proper and sufficient width, similar in style to those in other parts of the city, and well done according to the laws and ordinances of the city; that they were in good order and condition, needing no repair or improvement, and no resetting, alteration or substitution; that the new curbing was no repair, but that the city chose, of her own purpose, to change the alignment of the curb and pavement, and to require a new and most expensive granite curb to be set on the new line, costing more than treble the expense of the former curb, without any allowance for the cost of the former curbing. On these facts the question is, did the laws conferring authority on the city to pave footways and curb them at the expense of the owners of the ground in front thereof, confer the power to set new and costly curbs on a new line at the expense of the owners?

As remarked by WOODWARD, J., in City *v.* Tryon, 11 Casey 402: "This is a power of special taxation, and must have explicit legislation to support it." The property in question lies on Broad street, between Race and Vine, and is therefore within the old city. The only legislation to which we have been referred, or which I have found, is in the Consolidation Act of February 2d 1854, and

[Wistar v. Philadelphia.]

in the 40th section, viz : " That it may be prescribed by ordinance that paving of streets, except at the intersection thereof, and of footways, and laying water-pipes within the limits of the city, shall be done at the expense of the owners of ground in front whereof such work shall be done, and liens may be filed by said city for the same, as is now practised and allowed by law." It may be conceded that curbing is a necessary part of paving to separate and support the footway from the cartway. It may be conceded also, that a general power to pave implies a power to repair and repave when the condition of the cartway or footway requires it; and of this prima facie the city officers may judge. The affidavit asserts that this was not a repair but a new alignment and alteration of the curb. Then does the 40th section of the Act of 1854 confer a power at pleasure, to change, take up, alter, and relay pavements, and reset curbs, at the expense of the owner of the front, who has recently paid for a good pavement or curb ; and therefore to do this as often as the city may choose to alter its plans of improvement. Without referring to any power in the legislature to confer such an authority, the question is, is this the true scope and design of the legislation before us; is it the interpretation we should give to the section ? We think not. A power so onerous upon the citizen must be plainly conferred, if, indeed, it is not obnoxious to the charge that it is palpably oppressive and unjust. It is in derogation of the right of private property, seeking to lay a special tax on a small class of citizens. The foundation of this power, to tax specially, is the benefit the object of the tax confers on the owner of the property. The law simply provides for the paving of streets and footways at the expense of the front owner, What would any one ordinarily understand is meant by paving streets at the expense of the owners of the ground fronting thereon ? Clearly that paving which is customary.

An unpaved street is inconvenient and disagreeable, and property lying on it is less valuable. To remove these evils the city paves, and the owner whose property is thus benefited is required to pay for it. Such a law is not unjust, and as thus understood the legislature passes it and the courts sustain it. Being in this form, it is beneficial to the public and to the property owner. But if we say the city may change its pavements at pleasure, and as often as it please, at the expense of the ground owner, we take a new step, and there must be explicit legislation to authorize such taxation. If the 40th section were before the legislature on its passage, would any member suppose for a moment he was committing to the city a power to alter its pavements, take up, relay, experiment on one kind, then on another, and so *toties quoties*, as a change of views or of interests might dictate, and that this should be done at the expense of the ground owners, without their consent, and notwithstanding they had paid fully for that improvement of the street,

[Wistar *v.* Philadelphia.]

which was the basis of their taxation?   Clearly no one would take
such a meaning from the 40th section, or he would at least doubt
this intent; and if doubtful it is not explicit.   If, while the pave-
ment is good and stands in no need of repair, the city may tear it
up, relay, and charge the owner again with one excessively costly,
it would be exaction, not taxation.   Of course the city may change
its plans of improvement, and experiment to suit the views of those
in power, and if it be unwise, the corrective lies in the popular
vote to remove those guilty of such folly and lavish expenditure.
But under the 40th section no such changes and experiments
can be made at the expense of the lot owners, who have no power
to correct the evil.   We are not at liberty to impute such a design
to the legislature, unless it has plainly expressed its meaning to do
this unjust thing.   Whether the legislature can do so is not our
question.   We must not force the words of the law, but in these
times of jobbing and corrupt practices adhere to the strict line of
interpretation set before us by our predecessors.   There must be
explicit legislation to support special taxation.   It was in this
spirit Justice WOODWARD wrote in the City *v.* Tryon, *supra*, and in
which he was led in City *v.* Hoxie, 2 Wright 339, to say, that there
was no authority for the building of culverts within the old city, at
the expense of the lot owners.   See also Reed's Ex'rs *v.* City of
Erie, 29 P. F. Smith 346.   For these reasons we think the de-
fendant was entitled to a trial by jury of the facts set forth in his
affidavit.

   It is proper here to advert to the case of Lea *v.* City of Phila-
delphia, 1 Weekly Notes 189, see s. c. reported in 32 Leg. Int.
292, which was commented upon in the argument.   That was
a case of *repair*, having no bearing on this.   It is proper to say
that the obscurity supposed to exist in the opinion, does not exist
in the original on file, but in the report, and is owing to the at-
tempt to condense it by the reporter.   The reported opinion cer-
tainly is not clear.

Judgment reversed and a *procedendo* awarded.

   Additional opinion delivered May 22d 1876,
   PER CURIAM.—Since the filing of our opinion in this case we
have been referred to the Act of 16th of April 1838, sect. 3,
Pamph. L. 626, authorizing the councils of Philadelphia " to make
and establish so many rules and regulations as to them may seem
expedient for the better regulation of porches, benches, door-steps,
railings, bulk-windows, areas, cellar-doors," and a large number
of other subjects, proper for city regulation, concluding, " and at
the expense of the owner or owners of the property adjoining, to
regulate, grade, pave and repave, curb and recurb, the said foot-
ways or sidewalks," &c.   It is evident this section is no more than
a collection and consolidation in a short compass of the various

[Wistar *v.* Philadelphia.]

subjects of general regulation, and the provision for paving and repaving simply conveys the ordinary power for this purpose. It was not intended to subject the property of the citizens to arbitrary changes of policy, or of opinion, or caprice, which follow changes in councils, or in their views of improvement. We cannot suppose the legislature meant to convey any such extraordinary and oppressive authority. If it did, then the later Consolidation Act of 1854, must have been intended to restrict it. Johnson and Freeman's Appeal, 25 P. F. Smith 96, is no recognition of the Act of 1838, as giving a wider grant of power; but as Justice GORDON remarks, the Act of 1854 is the nerve through which the city derives its power.

We perceive no reason to alter the opinion filed in this case.